Estate of Walter Williamson, Deceased, Marion S. Williamson, Administratrix v. Commissioner.
Estate of Williamson v. Commissioner
Docket No. 1605.
United States Tax Court
1944 Tax Ct. Memo LEXIS 216; 3 T.C.M. (CCH) 625; T.C.M. (RIA) 44200; June 7, 1944
*216 Harold B. White, Esq., 200 Fifth Ave., New York City, for the petitioner. Arthur Groman, Esq., for the respondent. DISNEY
Memorandum Opinion DISNEY, Judge: This case involves income taxes for the calendar years 1939 and 1940 in the amounts of $127.73 and $119.62, respectively. The only question presented is whether the respondent erred indisallowing the deduction of a credit for personal exemption as head of a family, under section 25 (b) (1) of the Internal Revenue Code. That section, together with Regulations 103, section 19.25-4 presented thereon, is set forth in the margin. [1]
*217 The petitioner's brief disregards our Rule 35 (b) in that, in stating the facts, no reference is made to pages of the transcript relied upon for the statement of facts. Therefore, the statement of facts requested by the respondent, which does comply with the rule and which examination of the record indicates complies therewith and states correctly facts of record, is in the main followed as our findings of fact herein. Such facts are: [The Facts] During the taxable years 1939 and 1940 petitioner's decedent, Walter Williamson, was a widower, residing at 205 East 78th Street, and 70 East 96th Street, New York, New York. He filed his individual income tax returns for the years 1939 and 1940 with the collector for the second district of New York. He was College Manager of Athletics and Professor of Hygiene at City College. There lived with him during the taxable years his daughter, Marion S. Williamson, who became 25 years old in 1939. She had attended Wells College at Aurora, New York, for a year and a half, and from September 1933 to March 1935, she attended American Academy of Dramatic Arts. She kept house for her father, and until 1936, except for schooling, did nothing else *218 except a little radio advertising and amateur stock work for which she received only a small amount of money. From about May 1936 to July 1937 she worked for a prominent bank and trust company of New York as a filing clerk, for $13.85 a week. In July 1937 she became ill, had to give up her job and was under the treatment of doctors, and was in the hospital the rest of the summer. From the spring of 1938 to the end of the year she worked for another trust company at $18 a week. During 1939 she attended Collegiate Secretarial Institute up to September. She worked from September 1939 to the end of the year receiving $22 a week, and during 1940 was employed - earning $1,215.59. At all times her father maintained the home at his own expense and paid her expenses. In addition, during the years 1939 and 1940, he gave her an allowance of $50 per month. He reported for Federal income tax purposes gross income of $8,022.82 for 1939, and $7,965.34 for 1940. During the taxable years the rent of the apartment occupied by the father and daughter was $112.50 per month up to October 1940, and thereafter $105 per month. Food expenses at the apartment were approximately $10 to $12 a week on the basis *219 of five days a week, additional expenses being incurred the other days of the week. The father's position as college professor called for a certain amount of entertaining and as he had no wife, the daughter felt an obligation to maintain the social end of the home. A maid was kept five days a week. Early in 1939, because of an emotional upset, Marion S. Williamson was sent by her father to a psychoanalyst, but she was able to attend school and to work, her health being fair. During 1940 she was in good physical condition and able to work. Her father did not seek to control her and treated her as an adult. Under the above circumstances was the father the head of a family, as contended? The petitioner, quoting the regulation and thought recognizing the fact that it requires that the individuals comprising the family be dependent, contends to the contrary. We have, however, repeatedly recognized that feature of the regulation which has stood throughout repeated enactments of the law. Percy Wade, 40 B.T.A. 328; Richard H. Baumbach, 42 B.T.A. 88; Charlotte Hoskins, 42 B.T.A. 117. We hold that *220 the daughter is required to be dependent upon the father in order for the credit to be sustained. We hold further that she was so dependent during 1939 until October 1, but was not a dependent in 1940. In 1939 her health was fair, though she had an emotional upset, and after going to school until September, she earned a little money the rest of the year. She did not in that year earn by any means as much as the $710 income of the petitioner's mother in Joseph N. Kallick, 45 B.T.A. 992, where we allowed the exemption. The moral duty of the father toward the daughter here, looking after the social end of his household and doing housework, seems equal to that in the Kallick case. The daughter had been in an uncertain state of health, as indicated by her breakdown in 1937 and emotional upset early in 1939; and her earnings had been more or less intermittent. We think that while she was in school in 1939, earning no money but preparing herself to do so, she was dependent upon her father. Her livelihood during that period depended upon him. After she finished school in September 1939 and started to work, that dependency ceased, for she started earning *221 at the rate of approximately $1,200 per year and earned more than that in 1940. We disallow the claim of exemption for one-forth of 1939, for the last three months of the year, and all of 1940. The Kallick case does not justify exemption as to that period as to one earning so much as the daughter in this case. Decision will be entered under Rule 50. Footnotes
1. SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. * * * * *
(b) Credits for Both Normal Tax and Surtax. - There shall be allowed for the purposes of the normal tax and the surtax the following credits against net income: (1)Personal Exemption. - In the case of a single person or a married person not living with husband or wife, a personal exemption of $1,000; or in the case of the head of a family or a married person living with husband or wife, a personal exemption of $2,500. A husband and wife living together shall receive but one personal exemption. The amount of such personal exemption shall be $2,500. If such husband and wife make separate returns, the personal exemption may be taken by either or divided between them. SEC. 19.25-4. Personal exemption of head of family. - A head of a family is an individual who actually supports and maintains in one household one or more individuals who are closely connected with him by blood relationship, relationship by marriage, or by adoption, and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation. * * *↩