Florence Wilson v. Commissioner.
Wilson v. Commissioner
Docket No. 14082.
United States Tax Court
1948 Tax Ct. Memo LEXIS 167; 7 T.C.M. (CCH) 358; T.C.M. (RIA) 48098; June 10, 1948
Chester A. Allen, Esq., 342 Fulton St., Brooklyn, N. Y., for the petitioner. John J. Madden, Esq., for the respondent. MURDOCK
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $559.75 in income and victory tax for the calendar year 1943. The issues for decision are whether the petitioner is entitled to a personal exemption of $1,200 as head of a family and whether the assessment of the deficiency is barred because the notice of deficiency was mailed after the period for assessing a deficiency for 1942 had expired. Findings of Fact The petitioner filed returns for 1942 and 1943 with the collector of internal revenue for the *168 first district of New York. The return for 1942 was filed on March 15, 1943. The notice of deficiency was mailed on February 21, 1947. The petitioner, a spinster, purchased a dwelling at 2521 Avenue M, Brooklyn, New York, in 1931. She resided there with the other members of her family consisting of her father, mother and her sister Maud. Her father died in 1935 and her mother died in 1939. Maud was married at some time between the close of 1943 and February 25, 1948. The petitioner offered the above property for sale after Maud was married and sold it as soon as she could. She moved to an apartment. Maud, who was about 15 months older than the petitioner, was born on September 29, 1893. She was graduated from college in 1917 and thereafter took a course in dental hygiene at Columbia and a secretarial course elsewhere. She was successfully engaged in dental hygiene work until 1935 at which time her employer discontinued its regular medical department. Thereafter she was unsuccessful in her efforts to obtain permanent employment. She was unemployed during 1942 and 1943 although capable of holding a position had she obtained one. The petitioner's claim for the personal exemption *169 of $1,200 under section 25 (b) (1) is based upon Maud's alleged dependence upon her. Maud filed income tax returns for 1942 and 1943 showing taxable income as follows: 1942
1943
Dividends
$404.20
$ 404.40
Interest
143.21
113.57
Taxable portion of endowment
policy which matured in 1943
520.08
$547.41
$1,038.05 She claimed on each return the exemption of $500 allowed a single individual under section 25. Maud owned at least the following assets during the calendar years 1942 and 1943, and the fair market value thereof was at least in the following amounts: Assets
1942
1943
Balance in Williamsburg Savings Bank, Account No. 17372
$ 2,717.95
$ 3,704.38
Balance in Williamsburg Savings Bank, Account No. 208417
2,478.54
Balance in Seamans Bank for savings
757.70
791.60
38 Shares Amer. Tel. & Tel. Co.
4,840.25
5,937.50
15 Shares Westinghouse Elec. Mfg. Co.
1,226.25
1,413.75
11 Shares Radio Corp. of America
53.62
104.50
$500.00 par value Amer. Tel. & Tel. 3% bonds, 1956
536.25
580.00
Total Assets
$10,132.02
$15,010.27
Maud did not contribute any of her money towards living expenses during 1942 or 1943 but *170 placed her income in her savings accounts. The petitioner gave Maud cash and paid various amounts directly for her benefit during 1942 and 1943. These expenditures were for clothing, accident, life and endowment insurance premiums, college dues, Dental Association dues, and miscellaneous supplies. The total amounts were $1,269.69 for 1942 and $1,051.29 for 1943. The record does not show any breakdown of those totals. The petitioner also expended the following amounts: 1942
1943
Meals
$ 320.14
Maid
$ 495.00
585.00
Gas and electricity
100.54
110.72
Household expenses
1,029.07
1,888.53
Fuel oil
229.96
231.91
Taxes on home
446.50
456.77
Total
$2,301.07
$3,593.07
The item of meals represents the amount paid for meals of the petitioner and Maud at places other than their home. The item described as "maid" was for household help in the home to assist Maud who also did housework in the home and planned the meals. Gas and electricity was for light and cooking, and fuel oil was for heat in the home. Household expenses represents the cost of food, household supplies, and repairs to the house. The petitioner was not the head of a family during *171 1942 or 1943. Opinion MURDOCK, Judge: The following quotation from Charlotte Hoskins, 42 B.T.A. 117, is apposite here: "Commendable and praiseworthy as petitioner's efforts were in behalf of her niece, we can not agree that there was any such dependency on the part of the adult niece so as to entitle petitioner to classification as the head of a family. True, this petitioner carried the burden of maintaining and providing a living and quarters for both, but this fact does not entitle petitioner to classification as the head of a family. Her right of control went to the living she would provide and the quarters she would furnish. Petitioner could exercise no control over her niece except through the latter's gratitude for her aunt's generosity. Dependency under the definition goes further than economic convenience; its speaks in terms of people incapable of supporting themselves because of infancy, senility, mental incompetence, physical incompetence, and like or similar circumstances. Cf. Augustus S. Loyless, 40 B.T.A. 600. Economic factors in recent years have made many able-bodied, intelligent persons dependent upon the generosity of others, but these *172 conditions did not make the donor the head of a family within the meaning of section 25 (b) (1) and article 25-4, Regulations 86 and 94." Cf. Richard H. Baumbach, 42 B.T.A. 88. The petitioner does not discuss these or any other decided cases. She presents no argument not already answered in the cases cited by the respondent. The Commissioner determined no deficiency for 1942 and the petitioner's argument on the statute of limitations is contra to our holding in Lawrence W. Carpenter, 10 T.C. 64. Decision will be entered for the respondent.